*No.* **WR-CV-96-87**

## *District Court of the Navajo Nation*
### *Judicial District of Window Rock*

**Donald Benally,** *et al., Relators,*

*vs.*

**Guy Gorman,** *et al., Respondents.*

Decided September 30, 1987

## OPINION

*Before Robert Yazzie, District Court Judge.*

*Michael Upshaw, Esq., William Riordan, Esq., and Arita Yazzie, Esq., Navajo Nation Department of Justice, Window Rock, Arizona for the Relators; Richard Hughes, Esq., Dale T. White, Esq., and Sandra Hansen, Esq., Boulder, Colorado for the Respondents.*

*Opinion delivered by Yazzie, District Court Judge.*

### Introduction

This case involves the question whether the Navajo Education and Scholarship Foundation (hereinafter NESF or "The Foundation") is a Tribal entity or a private Non-Profit Corporation. The Foundation was organized solely for purposes of raising funds from private and public sources to support the education goals and programs for the benefit of Navajo students.

To determine the legal status of the Foundation, this Court must look at the authority of the Advisory Committee, and the rights and responsibilities of a corporate entity under Navajo law.

### Parties

1. Petitioner Michael P. Upshaw is the Attorney General of the Navajo Nation.

2. Relators include Donald Benally, Daniel Tso, Loyce Phoenix,

Rebecca Martgan, Bobby Charley, Richard Kontz, Paul Sage, Kee Ike Yazzie and Manuel Shirley.

3. Respondents include Guy Gorman Sr., Vivian L. Arviso, Elouise DeGroat, Annie D. Wauneka, Alyce Rouwalk, Rosalind Zah, David L. Tsosie and Albert A. Yazzie.

4. All the individual relators and respondents are enrolled members of the Navajo Tribe with permanent residence within the Navajo Nation.

5. Navajo Education Scholarship Foundation, Inc., was established and created on October 12, 1983.

6. The principal place of NESF is at Window Rock, Navajo Nation.

## JURISDICTION

7. Jurisdiction arises pursuant to 7 N.T.C. Section 252 (2), in that the causes of action hereto have occurred within the territorial jurisdiction of the Navajo Nation.

## Findings of Fact

1. On January 28, 1981, the Navajo Tribal Council adopted a revised Plan of Operation for the Advisory Committee of the Navajo Tribal Council. *See* Resolution CFA-1-81 at 2 N.T.C. Secs. 341-344 (1985 Supp.) In that resolution, the Tribal Council authorized the Advisory Committee "[to] create any enterprises, colleges, ONEO, or other entity of the Navajo Nation by adoption of its Plan of Operation and to amend or rescind that plan. . . ." 2 N.T.C. §343(b).

2. The Navajo Education and Scholarship Foundation was first established by the Advisory Committee; by Resolution ACO-171-83. Under this resolution, the Advisory Committee adopted NESF Articles of Incorporation and declared NESF as a "nonprofit, non-member Corporation." The resolution further provided that:

　　a) The Chairman of the Navajo Tribal Council appoint NESF Board of Trustees, with Advisory Committee concurrence. See Article V (D).

　　b) The Advisory Committee has full authority to approve any and all amendments to the NESF Articles of Incorporation. (See Article IX.)

3. On January 30, 1986, the Navajo Tribal Council enacted the Navajo Nation Corporation Code and Navajo Nation Non-Profit Corporation Act by Resolution CJA-2-86, which became effective August 1, 1986.

4. On November 13, 1986, the Advisory Committee approved amendments to NESF Articles of Incorporation by Resolution ACN-183-86. That resolution:

　　a) Gave the majority of a quorum of NESF, (*See* Article [D]);

b) Eliminated the need for Advisory Committee approval of amendments to NESF Articles of Incorporation, and authorized the NESF Board of Trustees to amend the articles; and

c) The Advisory Committee further authorized NESF Board of Trustees "to comply with the Navajo Tribal law by filing (the amended) Articles of Incorporation with the Commerce Department to comply with the Navajo Tribal Law."

5. The first NESF Board of Trustee, Respondents herein, are:

| | |
|---|---|
| Guy Gorman Sr. | Alyce Rouwalk |
| Vivian L. Arviso | Rosalind Zah |
| Elouise De Groat | David J. Tsosie |
| Annie D. Wauneka | Albert A. Yazzie |

6. On December 18, 1986, the Commerce Department issued NESF a Certificate of Incorporation, authorizing it to transact business within the Navajo Nation as a Non-Profit Corporation.

7. On February 25, 1987, the Advisory Committee passed two resolutions which attempted to:

a) Reestablish NESF, only, as an entity of the Navajo Nation. The Advisory Committee fully rescinded Resolution ACN-183-86, which had created NESF as a private nonprofit corporation, separate from the Navajo Nation. The Advisory Committee further declared the NESF Articles of Incorporation as null and void. *See* Resolution ACF-52-87.

b) Remove all the existing members of Board 1 (Respondents) and replace them with the Relators as successors of NESF Board of Trustees:

| | |
|---|---|
| Donald Benally | Richard Kontz |
| Daniel Tso | Paul Sage |
| Loyce Phoenix | Kee Ike Yazzie |
| Rebecca Martgan | Manuel Shirley |
| Bobby Charley | Lewis Calamity |

8. On March 13, 1987, the Navajo Nation, and on behalf of Relators, filed Quo Warranto Proceedings against Respondents to prevent Respondents from taking any further action as NESF.

9. Because of the unresolved question of which Board is the valid Board of NESF, it was necessary during the pendency of this action that the Court appoint these persons as the Interim Trustees to manage and direct the daily affairs of NESF.

## ISSUES

*I. Was the action of the Advisory Committee on November 13, 1986, proper and valid?*

*II. Was the action of the Advisory Committee on February 25, 1987, proper and valid?*

# Opinion

## INTRODUCTION

When a court is faced with reviewing any legislative action, that review must be conducted under certain principles. The main principle of judicial review is the presumption that the legislative act is proper and legal. The word "presumption" is a legal term which means that a thing is accepted as true or proven unless that presumption is rebutted by evidence to the contrary. One of the factors in determining whether an act is proper or legal is whether the legislative action is rationally related to a legitimate governmental purpose.

A second presumption guiding the courts is that the legislators acted from proper motives. If the legislative body did a proper and legal act, the court will not examine the motives of the legislators. Motives will be examined only to the extent needed to determine if the legislative action should be invalidated on grounds of fraud and bad faith.

A government consists of at least three functions: determination of principles and policies of the society being governed; execution of those policies through the instruments of government; and resolution of questions and disputes arising under the principles and policies of the society.

The formulation of principles and policies should be done as close to the people as possible. In the United States this usually means that the legislative bodies, whose delegates, are representatives of the people. The reason for this is that no government can exist indefinitely without the support and voluntary obedience of a majority of the people.

2 N.T.C. Section 101 says that the Navajo Tribal Council is the governing body of the Navajo Tribe. A review of the Navajo Tribal Code indicates that the Tribal Council, as representatives of the Navajo people, retained to itself the legislative functions, and established the Executive Branch and the Judicial Branch to carry out the other functions of government.

As has happened with the states and federal government, the Navajo Nation government became so complex that further authority had to be delegated. Generally, this delegation has been to administrative agencies. The Navajo Nation is experiencing a development of administrative bodies and of administrative law.

The search for ways to make large and complex government efficient has

not stopped with administrative agencies. Governments also make use of corporations to provide certain governmental services.

It appears to the Court that the underlying questions in this case are delegations of authority and the validity of those delegations.

The Tribal Council has delegated certain powers to the Advisory Committee. Historically, the Advisory Committee has exercised powers in excess of those given to the other committees of the Tribal Council. The Court has not done an extensive study of the history of the Advisory Committee, but finds that the Plan of Operation of the Advisory Committee, which was passed by the Tribal Council on January 28, 1981, is the current delegation under which the Advisory Committee operates. A review of the Navajo Tribal Code shows that many statutes under which the Navajo Nation operates were passed by the Advisory Committee, but not the full Tribal Council. In effect, the Advisory Committee often operates as a second legislative body. The Court, however, does not have the enormous task of deciding whether this is proper. All the court need consider for purposes of this case is whether the Advisory Committee had the power to establish NESF in 1983, and the validity of subsequent acts of the Advisory Committee toward NESF.

The Plan of Operation of the Advisory Committee sets forth the purposes of the Advisory Committee. Those purposes include at 2 N.T.C. Section 341 (b):

(1) Act as the Executive Committee of the Navajo Tribal Council with general authority (as specifically provided herein), to act for the Navajo Tribal Council at such times when the Navajo Tribal Council is not in session.

(2) Monitor and coordinate the activities of all divisions, departments, and enterprises of the Navajo Nation.

The Plan of Operation of the Advisory Committee contains the following enumerated power:

To create any enterprise, college, ONEO, or other entity of the Navajo Nation by adoption of its Plan of Operation, and to amend or rescind that Plan, and to amend, or rescind the Plans of Operation of any entities already created by the Tribal Council. 2 N.T.C. Section 343 (B) (1).

This is apparently one of the "specifically provided" powers referred to in 2 N.T.C. Section 341 (b)(1).

By this Plan of Operation, the Navajo Tribal Council delegated to the Advisory Committee the power to create and abolish entities of the Navajo Nation. The Court is not able to determine whether this was a new delegation of authority. It is clear that in the early years, tribal entities and enterprises were established by the Navajo Tribal Council.

The word "entity" generally means an organization or body that has some existence independent of its individual members and staff. An entity has a recognized existence and being of its own. For example, the Advisory Committee of the Navajo Tribal Council is an entity. It has existed for many years even though the individual members have changed. An entity may also be a corporation.

Advisory Committee was delegated the power to create entities. The Court finds as a matter of first impression that this delegation by Tribal Council was proper.

The Advisory Committee was given the power to create an entity by adopting its plan of operation. The Advisory Committee was given the power to rescind plans of operation. This implies the right to abolish an entity. The Advisory Committee had the authority to establish NESF as a tribal entity in 1983. The question is whether the Advisory Committee did in fact create the foundation as a tribal entity by adopting its Plan of Operation. The Advisory Committee never adopted a Plan of Operation designated as such for the foundation. The Advisory Committee instead adopted "Articles of Incorporation of the Navajo Education and Scholarship Foundation."

It is easy to assume that because the Navajo Nation did not have a Corporation Code prior to January 30, 1986, that the Navajo Nation could not authorize incorporations prior to that time. This is incorrect. The Court has briefly reviewed the history of corporations in England and the United States. In this review the Court has relied on *Ballentine on Corporations*, Rev. Ed. (1946).

In England, prior to corporation acts, charters were granted either by the king or by a special act of Parliament. In the 19th century, England passed acts that dealt with the chartering of corporations.

In the United States, corporations were created by special acts of the various state legislatures until the 19th century when the states began adopting general incorporation laws open to all applicants. *Ballentine* at section 8 (a) says:

State legislatures have plenary power to create corporations. Formerly, corporations were created exclusively by special acts—that is, by acts creating a particular corporation, as distinguished from a general law allowing any persons to organize themselves into and be a corporation by complying with prescribed conditions; and corporations may still be created by special act, in the absence of a constitutional prohibition. Corporations may also be created under the authority of general laws. In most of the states, in order to remove the danger of favoritism and corruption in the creation of corporations, the people have adopted constitutional provisions declaring that, with certain exceptions, the legislature shall not pass any special act creating a corporation, but that corporations shall be formed under general laws only; and where there is such a prohibition, a special act creating a

corporation is absolutely void. Formerly when a corporation was to be organized, a private bill had to be introduced in the legislature, referred to a committee, passed through both houses and signed by the governor of the state. Delay, expense and corruption often resulted. General incorporation laws now make it possible for almost any enterprise to be conducted in corporate form upon compliance with simple formalities.

The Court finds that prior to the enactment of the Navajo Nation Corporation Code, the Navajo Tribal Council had the inherent governmental power to charter corporations. This inherent governmental power was recognized by the Navajo Tribal Council in 1979 when it chartered Toyei Industries. The first "whereas" clause of the resolution (CAP-13-79) granting the corporate charter says, "The authority to grant charters to corporations is an element of the inherent sovereignty of the Navajo Nation."

The chartering of corporations was done on an individual basis requiring a separate act of the Tribal Council for each incorporation. With the adoption of the Navajo Nation Corporation Code, the Navajo Nation provided a uniform procedure for the chartering of corporations, and provided certain laws under which each corporation must function.

The Court is persuaded by certain exhibits submitted by petitioners that the authority to charter corporations was never delegated to the Advisory Committee. The Court is particularly persuaded by the minutes of the Tribal Council on January 28, 1981, at which the Plan of Operation of the Advisory Committee was adopted, that such power was deliberately withheld from the Advisory Committee.

On its face the act of the Advisory Committee on October 12, 1983, purporting to grant a charter, was in excess of its authority.

As the Advisory Committee was in the habit of establishing tribal entities, and calling the authorizing document a "Plan of Operation", the Court finds that the Advisory Committee intended to charter NESF as a corporation.

Although the Advisory Committee had no authority on October 12, 1983, to charter corporations, the Court finds that the subsequent course of dealing with the NESF by the Navajo Tribal Government, ratified the act of incorporation.

Navajo students and the public, particularly donors, were allowed to believe NESF was properly chartered. The Budget and Finance Committee of the Navajo Tribal Council authorized a grant to NESF from the Pittsburgh and Midway Coal Mining Company Scholarship account to the Navajo Education and Scholarship Foundation (BFAU-118-86). The Navajo Nation permitted NESF to solicit funds for construction of an education center and to oversee the construction of the center. The Navajo Tribal Council appropriated funds ($1,000,000) toward construction of

the building (CS-72-85). Petitioners' exhibits contain documents which were drawn up to transfer the building to the Navajo Tribe with NESF having the right to lease space in the center as consideration for the efforts of NESF in raising the money to build the center. On October 12, 1983, the Advisory Committee granted a charter to NESF, and the Navajo Tribe Government thereafter acted toward NESF and allowed NESF to be held out to the public as a properly chartered corporation.

The Court is not prepared to say that a governmental function was delegated to NESF. The 1983 Articles authorized NESF to "solicit funds from private and public sources for the support of the educational goals and programs of the Navajo Tribe." (Article III, B.) That article also designates some specific purposes for which the solicited funds could be used. Soliciting funds for the use of Navajo People does not appear to be an exclusive governmental activity. Petitioners cite certain Tribal Code sections on solicitation of funds as support for the argument that NESF was a tribal entity. These sections were passed by the Tribal Council in 1970, making it a crime to solicit funds without authority in the name of the Navajo Tribe, or Navajo groups, "for the purpose of defrauding the Navajo Tribe, the Navajo People, or any group, class or individuals thereof." At the same time, the Tribal Council set forth conditions under which the authority to solicit funds could be granted. Those sections were contained in Chapter 3, of Title 17 of the Navajo Tribal Code. Chapter 3 was repealed in 1977 with the revision of Title 17 which is known as the Navajo Tribal Criminal Code.

The act of incorporation creates an entity that for certain purposes is regarded as a legal person and is entitled to certain civil rights guarantees. May a legislative body delegate to a private "person" certain powers and authority normally exercised by that legislative body? The Court has relied to some degree on *Sutherland Statutory Construction* (4th Ed.), for guidance on the issues of delegation of power. In *Sutherland* the issue of valid delegation comes under the threshold question of constitutionality; particularly the U.S. Constitution. The U.S. Constitution contains broad parameters of the power which each branch of government may exercise. In addition the tenth amendment states:

The powers not delegated to the United States by the constitution, nor prohibited by it to the States, are reserved to the States respectively, or the people.

Here we have the enabling document of the U.S. government delegating power from the people to the three branches of government. In the Navajo Nation, the governing power was originally placed in the Tribal Council, which delegated certain powers to the Executive Branch and the Judicial Branch. Despite these differences, and perhaps in light of them, the Court finds the material in *Sutherland* instructive. Section 4.11 of the treatise

deals with the delegation of legislative power to private persons.

Generally, a delegation to a private person, to decide what the law shall be or when a law shall be effective, has been held invalid. On the other hand, delegation of legislative power to private persons which is more of an administrative decision making process has been upheld. The granting of eminent domain powers to privately owned utility companies with the companies having the authority to decide what properties should be taken, and when, has been upheld. Private agricultural and environmental groups have been given the authority to nominate candidates for appointment to a fish and game conservation and control agency. This was upheld on the grounds that a delegation of legislative authority is legal if there are sufficient safeguards to assure that arbitrary power is not concentrated in persons or groups motivated by self-interest. In addition, private persons are frequently delegated powers in the creation of new political subdivisions, such as special drainage, water or reclamation areas, schools, park districts, etc.

The Court is not prepared to say there was a delegation to NESF. If there was, it appears to have been a valid delegation.

NESF has not been delegated any law making powers. The purposes of NESF are limited. NESF is subject to the laws of the Navajo Nation through the Navajo Nation Corporation Code. The Code sets out a procedure for involuntary dissolution and for revocation of the articles of incorporation.

The next question is one of tribal property. The Court is not convinced that NESF has ever had "tribal property" other than that appropriated from the Navajo Tribe to NESF for specific purposes. The Court is thinking in particular of the $1,000,000 appropriated for the building and the one time appropriation from the Budget and Finance Committee in 1986. The 1983 Articles, at Article III B. 2., states as one of the uses of funds collected:

To provide for the construction of a Navajo Education Center to belong to the Navajo Tribe and to house the programs of the Navajo Division of Education and related programs of the Navajo Tribe. It may do this either by providing funds to the Navajo Tribe for use in constructing said building, or else by otherwise participating in its construction pursuant to agreements entered into between the corporation and the Navajo Tribe.

As for any other property that might have belonged to the Navajo Nation, it appears that it was placed in the control of NESF by the Navajo Nation.

The 1983 Articles at Article IV on dissolution of NESF provides:

In the event of the liquidation or dissolution of the Corporation, whether voluntary or involuntary, no director, trustee, officer of the Corporation, or any other private person shall be entitled to any distribution or division of its assets. Any assets remaining to the Corporation at dissolution or liquidation, after paying or providing for its liabilities, shall be distributed to one or more nonprofit, charitable organizations which are tax-exempt under section 501 (c) (3) of the Internal Revenue Code or its successors, or, if permissible under federal tax law then in effect, to the Navajo Tribe, to be used to carry on activities consistent with purposes for which this corporation was organized. The specific recipients will be determined by written agreement between the Corporation and the Navajo Tribe. Any assets not so distributed by a Court of the Navajo Tribe to such a nonprofit, charitable organization, or to the Navajo Tribe if permissible under federal tax law then in effect, in accordance with said purposes.

Article IV of the 1986 Articles Provides:

In the event of the liquidation or dissolution of the Corporation, whether voluntary or involuntary, no Trustee, Officer of the Corporation, or any other private person shall be entitled to any distribution or division of its assets. Any assets remaining to the Corporation at dissolution or liquidation, after paying or providing for its liabilities, shall be distributed to one or more not for profit, charitable organizations for purposes of awarding scholarships to Navajo students which organizations are tax exempt under Section 501(c)(3) of the Internal Revenue Code of 1954 or its successors.

The 1983 Articles provided for options for disposition of the assets of NESF on dissolution. One of those optional distributee is the Navajo Tribe. It seems unlikely that the Navajo Tribe would be only a possible recipient of property it already owned. The 1986 Articles provide no choices. The only distributees upon dissolution are nonprofit organizations providing scholarships to Navajo students. The assets, which are acquired to benefit Navajo students, must be distributed for their benefit upon dissolution of NESF.

In addition, the Nonprofit Code at section 320 prohibits shares of stock and dividends. Section 303 permits a merger or consolidation only if the corporation surviving the merger is a nonprofit corporation.

The situation is somewhat analogous to a trust with NESF being the trustee and Navajo students being the beneficiaries.

This is very different from the situation in *Tome v. Navajo Nation*, 4 Nav. R. 159 (Window Rock D. Ct. 1983), where the contemplated transaction would have given a private individual absolute ownership of tribal assets. In *Tome*, the Court also found that there were sufficient disparities in the valuation of the assets to raise the questions of fiduciary responsibilities and good faith in the transfer of assets. Through the NESF, money is taken in and distributed outside the legislative process. Through the NESF

certain people are designated to oversee the funds. It does not appear that any intrinsic governmental powers have been delegated to the Foundation. The Court further finds that no tribal assets have been removed from the intended beneficiaries. NESF, both prior to November 13, 1986, and after, receives and distributes funds for the benefit of Navajos.

The Court holds that the Advisory Committee chartered the NESF and that the Navajo Nation ratified that by subsequent acts. This holding is very limited as it pertains to NESF. Advisory Committee has the power to create and abolish tribal entities. It does not have the power to grant corporate charters.

NESF was given the power to solicit donations and to distribute those donations. The Court is not convinced, however, that this is an exclusive delegation. The Court sees no prohibition on the Navajo Nation soliciting and negotiating for scholarship and educational donations to be given to the Navajo Nation or to NESF. The Navajo Nation through its appropriate governmental bodies may channel donations to NESF or may make appropriations to NESF. The Navajo Nation may also make other depositions of educational and scholarship donations to the Navajo Nation that are not inconsistent with the terms and conditions of the donation.

No specific property has been identified to the Court as being in question. The Court can address the issue only in the limited manner above.

## ISSUE I.

*Was the action of the Advisory Committee on November 13, 1986,*
*proper and valid?*

The 1983 Articles provided for participation by the Advisory Committee in two instances. The trustees were to be appointed by the Chairman of the Navajo Tribal Council and their appointment concurred by the Advisory Committee, Article V. D. Article IV provided:

These Articles of Incorporation may be amended by a majority vote of the Board of Trustees. Prior written notice of at least two weeks shall be given to all members of the Board of Trustees of any proposed change in the Articles. No amendment or alteration of the Articles of Incorporation shall take effect until the same is approved by a vote of the Advisory Committee of the Navajo Tribal Council.

On November 13, 1986, the Advisory Committee, by resolution ACN-183-86, approved amended Articles of Incorporation for NESF. This action of approval was authorized under the original Articles of Incorporation.

The Advisory Committee also authorized NESF to file the amended Articles with the Commerce Department to comply with Navajo Tribal

law. It is not clear that the Advisory Committee had the authority to direct such filing. It is clear, however, that NESF had the authority to file its Articles and receive a certificate of incorporation.

NESF was already a corporation chartered by the Navajo Nation. When NESF filed its amended Articles on November 13, 1986, it subjected itself to the laws of the Navajo Nation for the regulation and supervision of corporations as contained in the Navajo Nation Corporation Code.

The action of the Advisory Committee in approving the amended Articles was proper, even though by the act the Advisory Committee approved a change in the way the Board is selected, and it removed from the Advisory Committee any authority to approve future amendments to the Articles of Incorporation.

The Court has found nothing in its review of this case and the law, which could have prohibited the Advisory Committee from retaining in the Articles of Incorporation, certain powers and authority even though the corporation is registered under the Navajo Nation Corporation Code. This was not done.

## ISSUE II

*Was the action of the Advisory Committee on February 25, 1987, proper and valid?*

Prior to passage of the Navajo Nation Corporation Code, corporations chartered by the Navajo Nation were dissolved either voluntarily or involuntarily by act of the Tribal Council. Just as the Corporation Code provides a uniform method for the chartering of corporations, it also provides uniform procedures for the regulation of corporations.

One of the rights of corporations is due process. The Court finds that at the very least this means that changes in the corporate structure must be according to law. The Navajo Nation Corporation Code provides procedures for the amendment of articles of incorporation and procedures for the dissolution of corporations. Once the foundation became a corporation, it automatically received the legal right to have the law followed in actions regarding the foundation.

The Court understands the desire of the Advisory Committee to continue to have input into NESF. As was expressed earlier in this opinion, the Court generally will not examine the motives behind a legislative act if the act itself is proper and valid. The opposite is also true. The Court will not examine the motives behind a legislative act if the act itself is improper or invalid. The act of the Advisory Committee on February 25, 1987, was not according to the law of the Navajo Nation and the best of intentions will not make it so.

NESF was incorporated on October 12, 1983. It registered under and became subject to the Navajo Nation Corporation Code on November 13, 1986, by filing its Articles of Incorporation. The Court holds that any subsequent acts toward NESF, which were not in accord with its Articles of Incorporation and with the Navajo Nation Corporation Code, are invalid and of no effect.